IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| COURTNEY LAURENT HAMILTON, | CASE NO. 1:25-cv-2791 |
| Plaintiff, | DISTRICT JUDGE DAVID A. RUIZ |
| vs. | |
| JPMORGAN CHASE BANK, N.A., | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

As is discussed below, this report and recommendation recommends that the Court dismiss the complaint filed by pro se Plaintiff Courtney Hamilton and deny his motion to file an amended complaint.

*Background*

In December 2025, pro se Plaintiff Courtney Hamilton filed a five-count complaint against Defendant JPMorgan Chase Bank, N.A. Doc. 1. Hamilton alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681m "and related provisions," *id*. at 5, and four state-law claims, *id*. at 5–6. The Complaint alleges that this Court has federal subject matter jurisdiction, based on the Fair Credit Reporting Act claim, and alleges that the Court has supplemental jurisdiction over the related state-law claims. *Id*. at 2; *see* 28

U.S.C. §§ 1331, 1367(a). It does not allege diversity jurisdiction.[1]

After a case management conference in February 2026, the Court ordered "the parties … to show cause why this case should not be dismissed for lack of subject matter jurisdiction." Doc. 14, at 2. The parties filed responses. *See* Docs. 15, 17. In his response, Hamilton "conceded that his lone federal claim … does not provide him with a private right of action." Doc. 18, at 1. He asserted, however, that the factual allegations in his complaint "'remain viable'" and asked for "'leave to amend the complaint to clarify the proper federal statutory basis for jurisdiction.'" *Id*. (quoting Doc. 5, at 4). The Court thus gave Hamilton ten days "to file for the Court's review his proposed amended complaint on the docket." *Id*. at 2.

Hamilton responded to the Court's order by filing a motion for leave to file a first amended complaint, Doc. 19, and a proposed first amended complaint, Doc. 19-1. Chase then filed an opposition to Hamilton's motion. Doc. 20.

---

[1]    The Complaint also doesn't indicate the amount of damages Hamilton seeks. In his proposed amended complaint, Hamilton states that the bank account at issue in this case contained about $3,000, Doc. 19-1, at 3, which is far shy of the $75,000 amount-in-controversy threshold for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

*Discussion*

*1. The Court should dismiss the Complaint.*

For purposes of this discussion, the Court must take as true the facts alleged in the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In the Complaint, Hamilton alleges that "he is a business owner associated with Shiloh Works LLC." Doc. 1, at 2. In February 2025, he "opened a business deposit account with [Chase] for business operations." *Id.* The Complaint does not allege the name of the business for which Hamilton opened the account. But given the allegation that he is associated with Shiloh and the fact that the Complaint doesn't mention another business, the Court infers that Hamilton opened the account in Shiloh's name.

The Complaint alleges that Hamilton "deposited funds into the account, including an initial deposit of approximately two thousand dollars, and deposited additional checks intended for business use." *Id.* The following month, Chase restricted the account but failed to give Hamilton "a timely, clear, written explanation" for why it imposed the restriction. *Id.* Hamilton unsuccessfully attempted to resolve the matter with Chase and its agents. *Id.* at 2–4. In the course of these efforts, Chase personnel told Hamilton that "his information did not match LexisNexis data," which Chase used for "third party verification." *Id.* at 3. Chase, however, failed to give Hamilton "a timely written adverse action notice of the consumer reporting agency used, the nature of

3

reliance, and [his] rights, despite referencing reliance on consumer reporting type information as [allegedly] required by 15 U.S.C. § 1681m." *Id.*

Chase closed the account and mailed Hamilton a check for the funds in the account "on or about April 18, 2025." *Id.* Although Hamilton received the check on April 21, 2025, he "had a time sensitive business credit obligation due on April 19, 2025." *Id.* Chase's delay in "return[ing] [the] funds prevented [Hamilton] from paying that obligation on time." *Id.*

Because Hamilton missed this deadline, "the creditor"—inferentially, the entity to whom Hamilton was obliged to make the April 19, 2025 payment—"reported a derogatory tradeline on [Hamilton's] business credit profile." *Id.* This report, in turn, "damaged [Hamilton's] business credit standing and materially reduced [his] ability to obtain business credit products and to scale business operations." *Id.*

Finally, the Complaint alleges that Hamilton timely exercised his right to opt out of arbitration but that he experienced difficulty receiving confirmation from Chase of his decision to opt out. *Id.* at 3–4. Ultimately, Chase confirmed that Hamilton's decision was "accepted or was on file," but Hamilton only received this confirmation after complaining to federal regulators. *Id.* at 4.

The Complaint raises one federal and four state-law causes of action. Count one alleges a violation of 15 U.S.C. § 1681m. Doc. 1, at 5. This count relates to the information Chase allegedly received from LexisNexis and

4

Chase's alleged failure to give Hamilton "a timely written adverse action notice containing the required elements, including the consumer reporting agency identity, notice that the agency did not make the decision, and notice of [his] rights to dispute and obtain disclosures." *Id.*

Counts two through five allege state-law claims for breach of contract, conversion, "negligent misrepresentation and/or fraudulent misrepresentation," and declaratory and injunctive relief.[2] *Id.* at 5–6.

As noted, the sole federal claim in the Complaint is found in Count one, which alleges a violation of 15 U.S.C. § 1681m. Doc. 1, at 5. There is, however, no private right of action under Section 1681m. *Wood v. Third Fed. Sav. & Loan Ass'n*, No. 23-3042, 2023 WL 8174269, *3 (6th Cir. Nov. 20, 2023); *see* 15 U.S.C. § 1681m(h)(8); *Doe v. Charter Commc'ns, LLC*, 131 F.4th 323, 330 (5th Cir. 2025); *Perry v. First Nat'l Bank*, 459 F.3d 816, 820–23 (7th Cir. 2006). So Count one must be dismissed. *See* Doc. 19, at 2 (Hamilton conceding that Section 1681m "does not provide a private right of action").

This leaves four state-law counts. But before turning to the merits of these counts, the Court must determine whether it can or should exercise jurisdiction over them.

---

[2] Although the Complaint includes a sixth count, in the sixth count, Hamilton purports to reserve his later right to seek class action certification. Doc. 1, at 6. So Count six does not present an affirmative cause of action. And, in any event, Hamilton is pro se and cannot represent others in a class action. *See Christian Separatist Church Soc'y of Ohio v. Ohio Dep't of Rehab. & Corrs.*, No. 18-3404, 2019 WL 1964307, at *4 (6th Cir. Feb. 13, 2019); *see also* 7A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1769.1 (4th ed.).

The first question is whether the Court can exercise jurisdiction over the state-law claims. Under 28 U.S.C. § 1367(a), if a district court has "original jurisdiction" over a claim arising under a federal statute, it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A district court may, however, "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Although Section 1367 gives district courts "discretion in deciding whether to exercise supplemental jurisdiction[,] '[t]hat discretion … is bounded by constitutional and prudential limits on the use of federal judicial power.'" *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 866 (6th Cir. 2024). If the district court lacks jurisdiction to adjudicate a plaintiff's federal claims because, for instance, the defendants "are entitled to Eleventh Amendment immunity," then "'supplemental jurisdiction can *never* exist.'" *Id*. at 866–67 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998)). On the other hand, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is

6

proper *only* when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (emphasis added) (quoting *Oneida Indian Nation of N. Y. State v. Oneida Cnty., New York*, 414 U.S. 661, 666 (1974)); *see Benalcazar v. Genoa Twp., Ohio*, 1 F.4th 421, 424–25 (6th Cir. 2021) ("'[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover'; only where the 'claim is wholly insubstantial and frivolous' is jurisdiction lacking") (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

Here, Chase does not claim that it is shielded by any sort of immunity. Nor does it point to a statute that would foreclose jurisdiction over Count one. So the principle enunciated in *Stanley*—a district court lacks "jurisdiction to decide … state-law claims" when "'the district court lack[s] subject matter jurisdiction over any federal issues'"—does not require dismissing the state-law claims. *See* 105 F.4th at 867.

Further, although the Sixth Circuit has held that Section 1681m does not provide a private right of action, it did so in an unpublished decision. *See Wood*, 2023 WL 8174269, at *3. And while most courts that have confronted the issue have held that Section 1681m does not provide a private cause of action, *see Doe*, 131 F.4th at 330, that perspective is not unanimous, *see Barnette v. Brook Rd., Inc.*, 429 F. Supp. 2d 741, 745–49 (E.D. Va. 2006). Importantly, the Supreme Court has not held that Section 1681m does not

7

provide a private cause of action. *See Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105 (1933) ("the federal question averred may be plainly unsubstantial … 'because its unsoundness so clearly results from the previous *decisions of this court* as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'") (emphasis added). Although Count one fails on the merits, it is not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89; *see Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979) ("The question whether a cause of action exists is not a question of jurisdiction, and therefore can be assumed without being decided."); *see also Texas v. Ysleta del Sur Pueblo*, No. 17-cv-179, 2018 WL 1566866, at *8 (W.D. Tex. Mar. 29, 2018) ("federal courts retain jurisdiction over cases arising under federal law regardless of whether the court ultimately determines that a plaintiff has a right of action under the pertinent federal statute"). The Court, therefore, *can* exercise jurisdiction over the Complaint's state-law claims.[3]

---

[3] In the event that Court determines that Count one is "so insubstantial, implausible, … or otherwise completely devoid of merit as not to involve a federal controversy," *Steel Co.*, 523 U.S. at 89, then the Court cannot exercise supplemental jurisdiction over the state-law claims and they *must* be dismissed without prejudice, *see Stanley*, 105 F.4th at 867. Dismissal without prejudice is notably the same result that should follow if the Court first determines that Count one gives rise to federal jurisdiction but then declines to exercise supplemental jurisdiction.

This brings us to the question of whether the Court should exercise jurisdiction over the state-law claims. "In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997)). Because "[c]omity to state courts is considered a substantial interest," the Sixth Circuit has instructed courts to "appl[y] a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Id.* A court should thus "retain[] residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues.'" *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

Here, if the District Court accepts this recommendation, the only federal claim will be dismissed at an early stage of this litigation before the Court has set a case schedule. Given this fact and the fact that comity is a "substantial interest," the Court should decline to exercise supplemental jurisdiction over Hamilton's state-law claims. Those claims should thus also be dismissed. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical*, 89 F.3d at 1254–55 ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

9

*2. The Court should deny Hamilton's motion for leave to amend*

In his motion to amend his complaint, Hamilton asserts that his amended complaint will "cure … jurisdictional and standing issues identified by the Court." Doc. 19, at 2. And it will do this by removing the Complaint's reliance on 15 U.S.C. § 1681m and replacing it with a claim under the Electronic Fund Transfer Act, found at 15 U.S.C. § 1693 and following sections. *Id*. The amended complaint would also "clarif[y]" that Hamilton doesn't intend to represent Shiloh or "pursue claims belonging solely to" it and instead intends only to pursue claims for injuries that he suffered. *Id*. Finally, Hamilton states that the amended complaint would "narrow[] and clarify[]" Hamilton's state-law claims so that they allege injuries that are personal to him and not derivative injuries belonging to Shiloh. *Id*.

In his proposed amended complaint, Hamilton changes course from his initial Complaint. He alleges that his proposed amended complaint "arises from [Chase's] restriction and closure of an account through which [he] deposited and sought to access personal funds." Doc. 19-1, at 1.

Hamilton avoids alleging who opened the account, stating that in late February 2025, "an account was opened with [Chase] titled Shiloh Works LLC." *Id*. at 2. The account's "signature card" shows that the account was "a Chase Business Complete Checking account" and that Hamilton is "a Member who signed the card." *Id*. Hamilton alleges that while "the account was nominally classified by [Chase] as a business account, [he] used" it from the

beginning "for deposits that were personal in origin and payable to" him. *Id*. Among Hamilton's personal funds in the account were two checks—"a personal settlement check" and "a municipal-court-related check payable to" Hamilton, and about $2,000 in his "personal wages." *Id*.

Hamilton alleges that Chase restricted the account in mid-March 2025, "before it was used for meaningful business operations" and "without meaningful advance explanation." *Id*. At some point, Chase "questioned the legitimacy or verification of a deposit associated with the … settlement check." *Id*. Hamilton undertook "[t]he burden" of dealing with the restriction. *Id*. During this process, Hamilton learned from Chase personnel that Chase relied on LexisNexis—"rather than official records and branch-level verification"—to verify information and had been unable to verify certain information related to Hamilton and Shiloh. *Id*. at 3.

Chase confirmed that the entire account was "suspended" despite the fact that the account contained funds beyond those represented by the questioned settlement check. *Id*. Hamilton told Chase that he "needed" the funds in the account "for a time-sensitive personal financial obligation and … continued delay would cause harm." *Id*. Chase "ultimately issued a cashier's check dated April 17, 2025," for $3,109 "payable to Shiloh Works LLC." *Id*.

The proposed amended complaint also alleges that the account's deposit agreement outlined a procedure to opt out of arbitration. *Id*. Under the procedure, Hamilton had to exercise the opt out option within 60 days after

opening the account. *Id.* Hamilton attempted to timely opt out but Chase's personnel "blocked, misdirected, or disconnected" Hamilton. *Id.* At one point, a representative told Hamilton that "that opt-out could not be handled because the account was closed, even though [Hamilton] remained within the contractual opt-out period." *Id.* Chase, however, later told Hamilton that he had "effectively opted out and that it would not move to compel arbitration." *Id.*

The proposed amended complaint includes four counts. Count one alleges a violation of the Electronic Fund Transfer Act. *Id.* at 4. It includes the allegation that when Chase restricted the account, it "failed to timely and reasonably address the dispute over the funds, and failed to make funds available in a manner consistent with the" Act and related regulations. *Id.* Hamilton alleges that as a result, he suffered the "loss of access to personal funds, financial disruption, and time and effort expended to resolve" the matter. *Id.*

Counts two and three allege state-law claims respectively for negligence and "negligent misrepresentation and/or fraudulent misrepresentation." *Id.* at 4–5. In count four, Hamilton seeks a declaration that he opted out of arbitration "within the contractual time period" and that Chase acted contrary to the account's terms when it "refus[ed] or fail[ed] to process" his opt-out request. *Id.* at 5.

12

Chase opposes Hamilton's motion. Doc. 20. Where relevant, the substance of Chase's opposition is discussed below.

Hamilton's motion implicates several principles. Absent Chase's consent, leave of Court is required for him to amend his complaint. Fed. R. Civ. P. 15(a)(2). The Court should "freely" grant leave to amend "when justice so requires." *Id.* "'A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (citation omitted). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (citation omitted).

As to this latter point, when considering a motion under Federal Rule of Civil Procedure 12(b)(6), a Court is ordinarily confined to the four corners of the complaint. When confronted with a factual attack on a court's jurisdiction, however, the court may "actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). In that circumstance, the allegations are not presumed true, "'and the court … has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000)). A court engaging in this inquiry must

exercise caution, however, so that when "making factual findings with respect to a jurisdictional issue," it does not make "a finding [that] would adversely affect the merits of the plaintiff's case." *Id.* at 444.

Additionally, a court deciding a motion to dismiss under Rule 12(b)(6) may consider documents that are attached to the complaint or that are "referred to in the pleadings and … integral to the claims," even if not physically attached to the complaint. *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). The Court may also consider documents attached to a defendant's motion to dismiss "'if they are referred to in the plaintiff's complaint and are central to her claim.'" *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

In this case, Chase has not moved to dismiss. The Court raised jurisdictional concerns itself, however, and Chase responded and appended relevant documents to its response. *See* Docs. 17-1, 17-2. It references those documents, and those attached to its amended answer, *see* Docs. 16-1, 16-2, 16-3, in its opposition to Hamilton's motion to amend, *see* Doc. 20. The Court thus considers the documents attached to Chase's amended answer and its response to the Court's order to show cause.

This brings us to Count one in the proposed amended complaint, in which Hamilton alleges that Chase violated the Electronic Fund Transfer Act. Doc. 19-1, at 4. As Chase notes, there are at least two problems with Count

14

one. The first is that, as the Act's title suggests, its provisions only apply to electronic fund transfers. *See* 15 U.S.C. §§ 1693c–1693r; *see also Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008) (explaining that the Act "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems'") (quoting 15 U.S.C. § 1693(b)). Nowhere in the proposed amended complaint, however, does Hamilton allege that an electronic fund transfer took place into or out of the account. *See* 15 U.S.C. § 1693a(7) (defining the term *electronic fund transfer*).

The second problem is that the Act applies to an account "established primarily for personal, family, or household *purposes*," 15 U.S.C. § 1693a(2) (emphasis added), by "a natural person," 15 U.S.C. § 1693a(6). Courts construing this language have determined that the term "'purposes' suggests that the proper analysis under § 1693a(2) concerns the envisioned or actual use of the account as opposed to just its mere designation." *Sanders v. Truist Bank*, No. 20-cv-2181, 2021 WL 4185889, at *3 (W.D. Tenn. Mar. 31, 2021).

Normally, the Court would accept the amended complaint's allegation that Hamilton "used the account from the outset for personal, family, or household purposes." Doc. 19-1, at 4. But this is not an ordinary situation. When he filed the original complaint, Hamilton simultaneously filed an "affidavit of fact of Courtney Laurent Hamilton." Doc. 1-2. And in that document, Hamilton "declare[d] *under penalty of perjury* that" he "opened a

15

business account with [Chase] for business operations associated with [his] business." *Id*. at 1 (emphasis added). Hamilton's declaration under penalty of perjury cannot simply to be tossed aside when the facts declared in it prove inconvenient. Given Hamilton's declaration, it is a fact that the account was not "established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2). The Act therefore does not apply. *See* 15 U.S.C. § 1693a(2).

Given these two problems, an amendment including the proposed Count one would be futile.

The proposed amended complaint relies on Count one to assert federal-question jurisdiction and relies on supplemental jurisdiction with regard to the remaining claims. Doc. 19-1, at 2; *see* 28 U.S.C. §§ 1331, 1367. Given that Count one in the proposed amended complaint fails as a matter of law, and that the remaining claims arise under state law, the proposed amended complaint does not contain a viable federal claim. The appropriate course if the proposed amended complaint were the operative complaint, therefore, would be to decline to exercise jurisdiction over the state-law claims. *See Musson Theatrical*, 89 F.3d at 1254–55. Amending the Complaint would thus be futile. As a result, the Court should deny leave to amend. *See Colvin*, 605 F.3d at 294.

*Conclusion*

The Court should dismiss Hamilton's Complaint. The Court should dismiss Hamilton's federal claim with prejudice and his remaining state-law

claims without prejudice. The Court should deny Hamilton's motion for leave to file an amended complaint, Doc. 19.

Dated: June 25, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).